UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW LIFE MINISTRIES,

       PLAINTIFF,

v.                                       Case No. 05-74339

CHARTER TOWNSHIP OF MT. MORRIS,       Honorable Sean F. Cox

       DEFENDANT.

_____/

**OPINION GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On November 14, 2005, Plaintiff, New Life Ministries, filed this action against

Defendant, Charter Township of Mt. Morris ("the Township"), alleging that the Township's

zoning ordinance violates The Religious Land Use and Institutionalized Persons Act , 42 U.S.C.

§2000cc ("RLUIPA").  The matter is presently before the Court on Plaintiff's Motion for

Summary Judgment.  The parties have fully briefed the issues and the Court heard oral argument

on August 30, 2006.  For the reasons set forth below, Plaintiff's motion shall be granted.

## I.   BACKGROUND

Plaintiff New Life Ministries ("NLM") is a non-profit corporation organized for

religious, charitable and educational purposes, including, but not limited to, establishing and

maintaining religious worship and education, maintaining and operating churches, chapels,

schools, daycare centers, and care centers for the disabled, elderly, or others with special needs.

(Ex. 1 to Pl.'s Motion).

NLM owns a building located at 4243 Clio Road in Mt. Morris Township ("the

Property"). The Property is located in a commercial C-2 district under Section 11 of the

Township's zoning ordinance ("the C-2 District"). (*See* Pl.'s Compl. at ¶ 9; Def.'s Ans. at ¶ 9).

Section 11 of the Township's zoning ordinance includes certain "Permitted Principal

Uses" for properties within the C-2 District, including:

- "clubs, civic and fraternal organizations and lodge halls" (subsection 3);

- "theaters, assembly halls, concert halls or similar places of assembly when conducted completely within enclosed buildings" (subsection 5) and

- "public and private educational facilities and institutions" (subjection 6).

(*See* Admissions in Joint Proposed Preliminary Discovery Plan, Subsection (c)(I)).

The Township's zoning ordinance, however, "as consistently interpreted by the

Township," does not allow "religious assemblies" within the C-2 District. (*Id.* at Subsection

(c)(I)). The Township's zoning ordinance does permit "religious assemblies" in residential

districts in the Township - the RA, RE, R-1, R-2 and R-3 Districts. (*Id.* at Subsection (C).

Because it desired to use the Property for numerous purposes, including religious

assembly, NLM applied for re-zoning of the Property from the C-2 classification to a R-3 zoning

classification on November 22, 2004. (*Id.*). A public hearing was held by the Planning

Commission on January 3, 2005, at which time a unanimous recommendation to deny the

requested zoning was adopted by the Planning Commission.[1] (*Id.*).

---

[1] A petition to amend the Township's zoning ordinance was apparently filed by Plaintiff and others with the Township in February, 2005. That petition sought to amend the zoning ordinance to allow churches, synagogues, or other places of religious worship to operate in the C-2 District. A recommendation to deny the zoning text change request was adopted by the Planning Commission on March 10, 2005. On April 11, 2005, the Mt. Morris Township Board voted to accept the recommendation of the Township Planning Commission and voted to deny the text amendment request. NLM has not sought review of the April 11, 2005 Township Board decision. *(Id.)*.

Nevertheless, NLM has been using the Property for several purposes, including: alcohol and drug treatment programs, spiritual enrichment classes, youth activities, outreach meetings, and religious services. (Pl.'s Compl. at 7).

The Township only objects to NLM's use of the Property for religious services. In a letter dated October 25, 2005, the Township's attorney advised that absent "evidence of compliance with the zoning ordinance and our informal agreement, within seven (7) calendar days from the date of this letter, aggressive legal action will be viewed as necessary, and will be undertaken." (Ex. A to Pl.'s Compl.).

On November 14, 2005, NLM filed this action against the Township seeking a declaratory judgment and an injunction.

Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

II.   ANALYSIS

NLM asserts that the Township has violated 42 U.S.C. §2000cc(b)(1), which provides as

follows:

> (b) Discrimination and exclusion
> > (1) Equal terms
>
> > No government shall impose or implement a land use regulation in a
> > manner that treats a religious assembly or institution on less than equal
> > terms with a nonreligious assembly or institution.

NLM asserts that the Township has violated that provision by prohibiting religious assemblies in

the C-2 District, while allowing other similarly situated entities, with nonreligious purposes, in

that district.

In response, the Township asserts that: 1) NLM cannot maintain a claim under RLUIPA

because it has failed to met the jurisdictional requirements under the statute; 2) NLM cannot

demonstrate a sufficient "substantial burden" under RLUIPA; 3) there can be no RLUIPA

violation because there is a compelling governmental interest advanced by the Township's

zoning ordinance; 4) and an alleged oral agreement somehow precludes NLM from proceeding

with its RLUPIA claim.[2]

**A.     The Township's Jurisdictional Challenge To This Action Fails Because NLM's
         RLUIPA Claim Is Brought Under Subsection (b), Which Does Not Contain A
         Jurisdictional Test.**

As an initial matter, the Township claims that NLM cannot proceed with this action

---

[2]In its opening brief, NLM anticipated that the Township would assert that NLM's claim
is not ripe because NLM did not exhaust its administrative remedies by seeking a variance from
the Mt. Morris Township Zoning Board of Appeals.  The Township, however, did not raise that
issue in its response and, in any event, the Court is satisfied that NLM has established that
seeking the variance would be futile.  *See Murphy v. New Milford Zoning Commission*, 402 F.3d
342, 349 (2d Cir. 2005).

because it has failed to meet the jurisdictional requirements under the statute.

With respect to the claims relating to land use, RLUIPA provides as follows:

(a) Substantial burdens
    (1) General rule
    No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution–
        (A) is in furtherance of a compelling governmental interest; and
        (B) is the least restrictive means of furthering that compelling governmental interest.
    (2) Scope of application
    This subsection applies in any case in which–
        (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;
        (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or
        (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.
(b) Discrimination and exclusion
    (1) Equal terms
    No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
    (2) Nondiscrimination
    No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.
    (3) Exclusions and limits
    No government shall impose or implement a land use regulation that–
        (A) totally excludes religious assemblies from a jurisdiction; or
        (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

Under the plain language of the statute, there are two separate operative subsections of

RLUIPA under which a plaintiff can assert a claim: 1) subsection (a) (the "substantial burden

provision") and 2) subsection (b) (the nondiscrimination provisions, which include subsection

(b)(1), the "equal terms provision.") 42 U.S.C. §2000cc; *Midrash Sephardi, Inc. v. Town of

Surfside,* 366 F.3d 1214, 1225 & 1229 (11th Cir. 2004).

A plaintiff can proceed with a claim under subsection (a)(1), the substantial burden

provision, only if one of the three jurisdictional prerequisites set forth in subsection (a)(2) is first

met. *Id.* Unlike subsection (a)(1), however, the nondiscrimination provisions set forth in

subsections (b) do not require the plaintiff to meet a threshold jurisdictional test similar to that

articulated in subsection (a). 42 U.S.C. §2000cc; *see also Midrash Sephardi, Inc.*, 366 F.3d at

1229.[3]

NLM's claim in this action is that the Township's zoning ordinance violates 42 U.S.C.

§2000cc(b)(1), the equal terms provision.[4] Plaintiff does not assert any claims under subsection

(a), the substantial burden provisions. Accordingly, the Court concludes that NLM is not

required to meet the threshold jurisdictional test contained in subsection (a)(2).

In addition, because NLM has not asserted any claim under 42 U.S.C. §2000cc(a)(1), the

substantial burden provisions, the Township's argument that NLM cannot demonstrate a

---

[3]Because the plaintiff satisfied the requirements under subsection (a)(2)(c), the court in *Midrash Sephardi, Inc*. ultimately concluded that it did not need to resolve the question of whether the jurisdictional requirements found in subsection (a) apply to claims made under subsection (b). Nevertheless, the Court finds the analysis of the issue set forth in that case instructive.

[4]The Court notes that in its opening brief NLM incorrectly cited the provision as 42 U.S.C. §2000cc(B)(1) rather than (b)(1). However, given that NLM also cited the entire body of 42 U.S.C. §2000cc(b)(1) in its motion, it is clear that NLM is asserting a claim under 42 U.S.C. §2000cc(b)(1). NLM clarified that its claim is asserted under subsection (b) in its Reply Brief. (Pl.'s Reply Br. at 2).

sufficient "substantial burden" is misplaced.  NLM need not demonstrate a substantial burden in

order to succeed on a claim based on the equal terms provision.  *See e.g., Konikov v. Orange*

*County, Florida*, 410 F.3d 1317 (11th Cir. 2005)(finding no substantial burden was established,

but concluding that zoning ordinance violated the equal terms provision.)

 The Court must therefore determine whether NLM is entitled to summary judgment with

respect to its claim that the Township violated the equal terms provision.

**B.**   **NLM Has Established A Violation Of RLUIPA's Equal Terms Provision.**

 RLUIPA's equal terms provision states that "[n]o government shall impose or implement

a land use regulation in a manner that treats a religious assembly or institution on less than equal

terms with a nonreligious assembly or institution."  42 U.S.C. §2000cc(b)(1). "By requiring

equal treatment of secular and religious assemblies, RLUIPA allows courts to determine whether

a particular system of classifications adopted by a city subtly or covertly departs from

requirements of neutrality and general applicability.  A zoning law is not neutral or generally

applicable if it treats similarly situated secular and religious assemblies differently because such

unequal treatment indicates the ordinance improperly targets the religious character of an

assembly."  *Midrash Sephardi, Inc*., 366 F.3d at 1232.

 "There are four elements of an Equal Terms violation: (1) the plaintiff must be a religious

assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly

on less than equal terms, with (4) a nonreligious assembly or institution."  *Primera Inglesia*

*Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1307 (11th Cir. 2006).

 Under the statute, the plaintiff bears the initial burden of "produc[ing] prima facie

evidence to support a claim alleging an [Equal Terms] violation."  *Id*. (citing 42 U.S.C. §2000cc-

2(b)).  If the plaintiff meets its initial burden, the government bears the burden of persuasion on

any element of the claim.  *Id.*

Here, it is undisputed that NLM is a religious assembly or institution that is subject to a

land use regulation.  The first two elements are therefore met.  In support of the third and fourth

elements, that the Township treats religious assemblies on less than equal terms with

nonreligious assemblies and institutions, NLM refers the Court to the admissions set forth in the

parties' Joint Proposed Discovery Plan.

The Township admits that under its zoning ordinance the C-2 District has several

"Permitted Principal Uses," including: "clubs, civic and fraternal organizations and lodge halls"

(subsection 3); "theaters, assembly halls, concert halls or similar places of assembly when

conducted completely within enclosed buildings" (subsection 5) and "public and private

educational facilities and institutions" (subjection 6).  (*See* Admissions in Joint Proposed

Preliminary Discovery Plan, Subsection (c)(I)).  It is also undisputed that the Township's Zoning

Ordinance, however, "as consistently interpreted by the Township," does not allow "religious

assemblies" in the C-2 District. (*Id.* at Subsection (c)(I)).[5]

Relying on *Midrash Sephardi, Inc*., NLM asserts that the Township's ordinance, which

prohibits religious assembly in the C-2 District but permits any nonreligious assembly or

institution, violates the statute.

In *Midrash Sephardi, Inc*., two synagogues sued the town of Surfside, Florida, alleging

that a zoning ordinance excluding churches and synagogues from the business district, where

---

[5]The Township's zoning ordinance does permit "religious assemblies" in 5 other districts
in the Township - the RA, RE, R-1, R-2 and R-3 Districts.  (*Id*. at Subsection (c)(iii)).

private clubs and lodges were permitted, violated RLUIPA's equal terms provision.  The court

granted summary judgment in favor of the defendant, but the appellate court reversed.  The

challenged ordinance in that case divided the town into eight zoning districts.  The zoning

ordinance prohibited churches and synagogues in the business district, but allowed private clubs,

social clubs, lodges and theaters in the business district.  The appellate court concluded that

private clubs and lodges are similarly situated to churches and synagogues, and that the city's

differential treatment constitutes a violation of RLUIPA's equal terms provision.

In its brief in opposition to NLM's motion, the Township failed to address NLM's claim

under the equal terms provision.  Thus, the Township made no attempt to distinguish *Midrash

Sephardi, Inc.*

This Court concludes that, like the ordinance at issue in *Midrash Sephardi, Inc*., the

Township's zoning ordinance treats similarly situated entities differently.  Under the ordinance,

religious assemblies are entirely excluded from the C-2 District, although all of the following are

allowed in that same district:  private clubs, civic and fraternal organizations, lodge halls,

theaters, assembly halls, and public and private educational facilities and institutions.  Thus, it

appears that religious assemblies are singled out as the only assemblies or institutions that are

prohibited in the C-2 District.  In other words, groups that gather and meet with similar

frequency in the C-2 District are in violation of the zoning ordinance only if the purpose of their

assembly is religious.  Such treatment of religious assemblies on less than equal terms with

nonreligious assemblies constitutes an equal terms violation.  *Konikov,* 410 F.3d at1329.

The Township appears to assert that there can be no RLUIPA violation because the

Township's zoning ordinance provides that religious assemblies can be located in residential

districts within the Township -- just not in the C-2 District.  That argument, however, ignores

that the very purpose of RLUIPA's equal terms provision and the Court rejects it.

Like the parties in *Midrash Sephardi, Inc*., the parties here disagree as to the applicable

level of scrutiny that a law violating the equal terms provision must undergo.  The Township[6]

asserts that if a violation of the statute is found to exist, the Court must subject the offending

regulation to strict scrutiny.  The *Midrash Sephardi, Inc*. court concluded that an offending

regulation must undergo strict scrutiny.  Under that rubric, the offending regulation may be

upheld if the defendant establishes that the conduct employs a narrowly tailored means of

achieving a compelling governmental interest.  *Midrash Sephardi, Inc*., 366 F.3d at 1231-35.

The Township, however, has not articulated a compelling governmental interest behind

its differential treatment of religious assemblies in the C-2 District or established that the

ordinance is narrowly tailored to meet such an interest.  Accordingly, assuming that a strict

scrutiny analysis applies, the offending zoning ordinance cannot be upheld in this case.

## C.   The Township Has Failed To Establish The Existence Of Any Contract Between The Parties That Would Bar This Action.

Finally, the Township asserts that the parties entered into some type of oral contract that

should somehow be construed to bar NLM's RLUIPA claim.  The Township, however, has not

presented any evidence to establish that any enforceable[7] oral contract was reached by the

---

[6]NLM, on the other hand, takes the position that the equal terms provision, by its terms, does not allow a defendant to escape liability.

[7]NLM denies that any contract was entered into and also asserts that there could be no enforceable contract because there was no meeting of the minds, and that the alleged contract would fail for lack of consideration from the Township.  NLM also asserts that the alleged oral agreement would fail for failure to comply with Michigan's statute of frauds, MCL § 566.108.

parties, or explained how such a contract would bar this action.[8]  To the contrary, the Township

submitted the affidavit of Larry Foster who states that he made no promises or representations to

NLM.  (*See* Affidavit of Mr. Foster at ¶ 9(g).

### III.    CONCLUSION

For the reasons set forth above, Plaintiff' Motion for Summary Judgment [Docket Entry

No. 18] is GRANTED.[9]

S/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2006

---

**PROOF OF SERVICE**

**The undersigned certifies that the foregoing opinion and order was served upon counsel of record
via the Court's ECF System and/or U. S. Mail on September 7, 2006.**

**s/Jennifer Hernandez**
**Case Manager to**
**District Judge Sean F. Cox**

---

[8]If NLM breached a contract with the Township, the Township's apparent remedy would
be to sue NLM for breach of contract damages.  The Township, however, has not asserted any
breach of contract counterclaim in this action.

[9]The Court notes that NLM has also requested an award of its attorney fees incurred in
this matter and, on September 1, 2006, filed a Motion for Attorney Fees.  That motion will be
addressed in a separate opinion and order after the Township has had an opportunity to respond
to the Motion for Attorney Fees.